UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                                                         Plaintiff

v.                                                                         Criminal Action No. 3:15-cr-00054-5-RGJ

LEDINSON CHAVEZ                                                                                  Defendant

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

On August 30, 2018, a jury convicted Defendant, Ledinson Chavez, of conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349 (Count 1), health care fraud in violation of 18 U.S.C. §§ 1347 and 2 (Count 2), aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1), 1028A(c)5, and 2 (Count 13), and conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(1)(B)(i) (Count 16). [DE 399, Jury Verdict; DE 207, Indictment]. Chavez now moves for an order compelling the United States to produce documents cataloguing the items in Sergio Betancourt's possession at the time of each of his arrests. [DE 398]. The United States filed a Response [DE 411], and Chavez did not file a reply. Chavez also moves for judgment of acquittal on Count 13 under Federal Rule of Criminal Procedure 29 [DE 410] and judgment of acquittal on Count 16 under Rule 29 or, in the alternative, a new trial on Count 16 under Rule 33 [DE 451]. The United States filed Responses [DE 419; DE 455], and Chavez filed Replies [DE 438; DE 460]. These matters are ripe for adjudication.

Having considered the parties' filings and the applicable law, the Court **DENIES** Chavez's Motion for Documents Reflecting Inventory of Items in the Possession of Sergio Betancourt on Each Date of His Arrest [DE 398]; **DENIES** Chavez's Motion for Judgment of Acquittal on Count

1

13 [DE 410]; and **DENIES** Chavez's Motion for Judgment of Acquittal or for a New Trial on Count 16 [DE 451].

## DISCUSSION

A. **Motion for Documents Reflecting Inventory of Items in the Possession of Sergio Betancourt on Each Date of His Arrest**

Chavez has filed a Motion seeking "inventories of items seized from Sergio Betancourt at the time of his arrest in June 2015 as well as during his arrest in 2017." [DE 398 at 2891]. Chavez argues these documents are "material to preparing the defense." *Id*. The United States has filed a Response, arguing that Rule 16 does not require it to produce documents at this stage of the proceedings—*i.e.*, after a jury has already found Chavez guilty. [DE 411 at 3001–02]. The United States also asserts that even if Rule 16 did require disclosure at this stage, the documents requested are not material to preparing Chavez's defense. *Id.* at 3003. Regardless, the United States claims that the documents sought do not exist, and Rule 16 does not require the whole cloth creation of such documents. *Id.* at 3002–04. Finally, the United States claims that Chavez may obtain any existing documents by contacting the Deputy Marshals involved in coordinating Sergio Betancourt's 2015 and 2017 arrests. *Id.*

Rule 16 requires the United States to "permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places" in the United States' "possession, custody, or control" that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). Thus, by its own terms, Rule 16 is limited to documents that are "within the government's possession, custody, or control." Further, Rule 16 only applies to documents that already exist, and the United States is not required to create new documents for discovery purposes. *See, e.g.*, *United States v. Amaya-Manzanares*, 377 F.3d 39, 42–43 (1st Cir. 2004) ("Rule 16(a)(1)(E) did not apply to a the document until it was created."); *United States v.*

*Kahl*, 583 F.2d 1351, 1354 (5th Cir. 1978) (upholding a district court's refusal to grant discovery of government statistical compilations because such compilations did not exist); *United States v. Schembari*, 484 F.2d 931, 935 (4th Cir. 1973) ( "[T]he government cannot disclose what it does not have … "); *United States v. Harper*, 432 F.2d 100, 102 (5th Cir. 1970) (holding that "the failure to produce non-required records when they do not exist" does not violate the Jencks Act).

Here, the United States affirmatively represents that no inventory records exist. [DE 411 at 3003–04]. If the documents do not exist, the United States is not required to manufacture them. Further, the United States has provided Chavez with the opportunity to conduct further discovery on this point by contacting the Deputy Marshals involved in the arrests of Sergio Betancourt. *Id.* at 3004. This will allow Chavez to discover information regarding what was in Betancourt's possession at the time of his arrests. Accordingly, the Court denies Chavez's Motion.

B. **Motions for Judgment of Acquittal Under Rule 29**

 1. **Legal Standard**

Chavez moves for judgment of acquittal under Rule 29 for Counts 13 [DE 410] and 16 [DE 451]. A court should grant a motion for judgment of acquittal under Rule 29 only when the evidence admitted at trial, viewed in the light most favorable to the United States, was insufficient to permit a rational trier of fact to find guilt beyond a reasonable doubt. *United States v. Connery*, 867 F.2d 929, 930 (6th Cir. 1989) (citations omitted). Grant of a motion of acquittal is "confined to cases where the prosecution's failure is clear." *Id.* (citing *Burks v. United States*, 437 U.S. 1, 17 (1978)). In evaluating challenges to sufficiency of evidence, courts must not "weigh the evidence presented, consider the credibility of witnesses, or substitute [its] judgment for that of the jury." *United States v. Siemaszko*, 612 F.3d 450, 462 (6th Cir. 2010) (citations and quotation omitted). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence

need not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Meyer*, 359 F.3d 820, 826 (6th Cir. 2004) (quoting *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir. 1989) (citation and quotation omitted)).

### 2. Count 13—Aggravated Identity Theft

Chavez argues that the United States failed to present sufficient evidence upon which a reasonable jury could find Chavez guilty of aggravated identity theft under 18 U.S.C. § 1028A. [DE 410 at 2995]. 18 U.S.C. § 1028A "imposes a two-year sentence for anyone who, [i] during and in relation to any felony violation enumerated in subsection (c), [ii] knowingly transfers, possesses, or uses, [iii] without lawful authority, [iv] a means of identification of another person." *United States v. Michael*, 882 F.3d 624 (6th Cir. 2018). Health care fraud is a predicate felony for aggravated identity theft. 18 U.S.C. §§ 1028A(c)(5), 1347; *United States v. Abdur-Rahman*, 708 F.3d 98, 100–01 (2d Cir. 2013). And anyone who "aids, abets, counsels, commands, induces or procures" the commission of a felony is punishable as a principal. 18 U.S.C. § 2. Aiding and abetting requires an "affirmative act in furtherance of the offense, with the intent of facilitating the offense's commission." *United States v. Carbins*, 882 F.3d 557, 563 (5th Cir. 2018).

In this case, chiropractor Todd Black testified that his license, social security card, and chiropractor license were used to credential Ledic Therapy Group Corp. ("Ledic Therapy") without Black's consent. [DE 429, Aug. 17, 2018 Tr. Vol. 5, 4082:15–25, 4083:1–16]. Black had originally supplied this information to Betancourt and Oskel Lezcano to credential Med Center Chiropractic & Rehab, LLC. [DE 429, Aug. 17, 2018 Tr. Vol. 5, 3958:11–17]. Black did not consent to the use of his information to credential any other clinic. *Id.* Indeed, it is undisputed that Black's driver's license, social security number, and chiropractor license are "means of identification" that were used to credential Ledic Therapy without lawful authority under 18

4

U.S.C. § 1028A.  But Chavez argues that the United States failed to show Chavez personally "transferred, possessed, or used" Black's identity in credentialing the clinic.  [DE 410 at 2995].

While Chavez is correct that the United States offered no direct evidence at trial that Chavez personally transmitted Black's documents to credential Ledic Therapy, there was ample circumstantial evidence upon which a reasonable jury could find Chavez guilty of aggravated identity theft.  Chavez's name appears as the incorporator of Ledic Therapy with the Kentucky of Secretary of State.  [DE 307 at 1679–80].  Chavez's driver's license and social security number were in the credentialing documents transmitted to United Health Care along with Black's driver's license, social security number, and chiropractor license.  [DE 428, Aug. 15, 2018 Tr. Vol. 3, 3881:7–21].  Chavez managed the Klondike Lane clinic where Black was a chiropractor.  [DE 385, Aug. 21, 2018 Tr. Vol. II, 2704:2–5].  And, when Betancourt asked Chavez about a clinic Lezcano had set up for Betancourt, Chavez said, "it was fine 'cause [Chavez] had his own—like, his own office – his own clinic."  *Id.* at 2703:25, 2704:1.  The United States asked Betancourt, "Was that the Ledic Therapy?"  *Id.* at 2704:4.  Betancourt answered, "Yes."  *Id.* at 2704:5.  A jury could reasonably rely on these facts to infer that Chavez, as head of Ledic Therapy, knowingly transmitted Black's means of identification to credential Ledic Therapy without Black's consent.

Chavez nonetheless argues that the credentialing documents cannot be considered because the United States did not prove that Chavez signed the letter contained within the credentialing documents transmitted to United Health Care.  [DE 410 at 2995].  As both parties note, this issue was discussed extensively at trial.  [DE 410 at 2995; DE 419 at 3163].  The Court admitted the Secretary of State records under Federal Rule of Evidence 803(6) but instructed the jury not to consider documents for any other purpose than notice that such document was filed and processed, and not for the truth of the matter asserted or validity of Chavez's signature, which was hearsay

5

within hearsay not subject to any exception. [DE 429, Aug. 17, 2018 Tr. Vol. V, 3974:14–23]. The Court admitted the credentialing documents under Rule 803(6)(E) because either Chavez signed the document himself or, as Chavez asserted, they were signed by one of his co-conspirators. [DE 442, Aug. 29, 2018 Tr. Vol. XII, 4988:11–15].

Chavez's reliance on the signature issue is misplaced. Even if the jury could not find directly that Chavez signed the credentialing documents, it could still reasonably conclude that the surrounding evidence—*i.e.*, that Chavez's name was listed as the incorporator of Ledic Therapy with the Kentucky of Secretary of State; that Chavez's driver's license and social security number were in the credentialing documents transmitted to United Health Care with Black's personal information; that Chavez managed the Klondike Lane clinic, where Black was a chiropractor; and that Chavez admitted Ledic Therapy was "his clinic"—sufficiently proved that Chavez transmitted Black's personal information. Further, the jury could have reasonably concluded, even without direct evidence, that Chavez signed the credentialing documents. The United States presented the jury with documents containing what Chavez did not dispute was his signature. [*See, e.g.*, DE 433, Aug. 23, 2018 Tr. Vol. IX, 4645:20–23]. The jury could have reasonably compared Chavez's verified signature on these documents with the signature on the Ledic Therapy credentialing documents and concluded that both signatures belonged to Chavez. Regardless, the question of Chavez's signature, while certainly relevant, is not dispositive. To find otherwise would violate the Sixth Circuit's mandate that district courts not "weigh the evidence presented, consider the credibility of witnesses, or substitute [its] judgment for that of the jury." *Siemaszko*, 612 F.3d at 462. There is sufficient circumstantial evidence on which the jury could have based its decision. Chavez's Motion is thus denied.[1]

---

[1] There was also sufficient evidence for a reasonable jury to conclude that Chavez aided and abetted the transmission of Black's personal information, even if Chavez did not transmit the information himself. A

6

### 3. Count 16—Concealment Money Laundering

Similarly, Chavez argues that there was no evidence from which a reasonable jury could find Chavez guilty of concealment money laundering. [DE 451 at 5243]. To convict Chavez of concealment money laundering under 18 U.S.C. §§ 1956(h) and 1956(a)(1)(B)(i), the United States had to prove: (1) the use of funds that were proceeds of unlawful activity; (2) knowledge that the funds were proceeds of unlawful activity; and (3) knowledge that the transaction was designed, in whole or in part, to conceal the nature, location, source, ownership, or control of the proceeds. *United States v. Warshak*, 631 F.3d 266, 319 (6th Cir. 2010) (citing *United States v. Marshall*, 248 F.3d 525, 538 (6th Cir. 2001) (citation and quotation omitted)).

Chavez does not dispute that the United States proved Chavez (1) used funds that were proceeds of unlawful activity, or (2) knew those funds were the proceeds of unlawful activity. [DE 451 at 5243]. But Chavez argues that the United States failed to show a transaction that was undertaken to conceal. *Id.* Chavez categorizes the United States' proof of concealment into five actions: (1) the creation of entities in the chiropractors' names and bank accounts for those entities; (2) commingling of legitimate and illegitimate funds; (3) cash withdrawals and disbursements from those accounts; (4) Chavez's failure to report purported income on his tax return; and (5) the purchase of cars. *Id.* Chavez contends that none of these actions is a transaction using the health-care-fraud proceeds that was designed to conceal, and thus Count 16 must be reversed. *Id.*

---

witness testified that Chavez was aware of the health care fraud conspiracy and was aware of the falsely-billed injections from the beginning. [DE 395, Aug. 22, 2018 Tr. Vol 1-A, 2844:7–13]. Another witness testified that Chavez and his co-conspirators discussed the falsely-billed injections after United Health Care conducted site visits at the clinics. [DE 384, Aug. 20, 2018 Tr. Vol 1, 2546:11–16]. And, as noted above, Chavez admitted that Ledic Therapy was "his clinic." [DE 385, Aug. 21, 2018 Tr. Vol. II, 2703:25, 2704:1]. Chavez must have known that a chiropractor's information was required to credential his clinic. The United States was not required to show that Chavez personally transferred, possessed, or used Black's personal information. The United States only needed to show that Chavez aided and abetted others to transfer, possess, or use Black's identity. 18 U.S.C. § 2; *Carbins*, 882 F.3d at 563. A reasonable jury could find that the United States did so.

Chavez is correct that under 18 U.S.C. §§ 1956(h) and 1956(a)(1)(B)(i), there must be (1) a separate predicate offense from which the allegedly laundered proceeds were derived, and (2) Chavez must have used those proceeds in a separate transaction meant to conceal the proceeds' source. To be considered "proceeds" for money laundering purposes, the United States must show that the predicate felony—here, health care fraud—was complete and that Chavez controlled the proceeds of that fraud. *United States v. Kerley*, 784 F.3d 327, 344 (6th Cir. 2015). Indeed, "the primary issue in a money laundering charge involves determining when the predicate crime becomes a completed offense after which money laundering can occur." *Id.* (citing *United States v. Nolan*, 223 F.3d 1311, 1315 (11th Cir. 2000) (internal quotation omitted)).

To determine whether the United States has proven a distinct predicate offense, then the Court must "consider the government's theory of the case, as alleged in the indictment." *Kerley*, 784 F.3d at 344 (citing *United States v. Crosgrove*, 637 F.3d 646, 655 (6th Cir. 2011)). Here, Count 1 charged Chavez with conspiracy to commit health care fraud by falsely and fraudulently billing United Health Care for injections never rendered. [DE 207 at 722–24]. Count 2 charged Chavez with a substantive count of health care fraud under 18 U.S.C. § 1347 for falsely and fraudulently billing United Health Care for injections and other services never rendered. *Id.* at 725. Count 16 charged Chavez with conspiracy to commit money laundering, alleging that Chavez and others knowingly conducted and attempt to conduct financial transactions, knowing that the property involved in the financial transactions represented proceeds from violations of 18 U.S.C. § 1347. *Id.* at 730–31.

The Court must also consider the underling statute. A person violates 18 U.S.C. § 1347 when the person "(1) knowingly devise[s] a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services;

(2) execute[s] or attempt[s] to execute this scheme or artifice to defraud; and (3) act[s] with intent to defraud." *United States v. Martinez*, 588 F.3d 301, 314 (6th Cir. 2009).

Because of the "executes or attempts to execute" language, health care fraud is complete, at the latest, when the payment is received in the mail from the health care benefit program for the fraudulent claim. *See United States v. Halstead*, 634 F.3d 270, 280 (4th Cir. 2011) ("At the moment that the healthcare provider paid money to Priority One, the crime of healthcare fraud was complete, and the money that the healthcare provider paid to Priority One was the 'proceeds' of the healthcare fraud."). Courts have held similarly in related contexts requiring a predicate offense. *See, e.g.*, *United States v. Rayborn*, 491 F.3d 513, 517 (6th Cir. 2007) ("The first step in the scheme was the commission of the underlying offense of mail fraud, which occurred when Rayborn sent fraudulent tax documents and other loan application materials to Wells Fargo."); *United States v. Prince*, 214 F.3d 740, 748 (6th Cir. 2000) (wire fraud was complete once the victims wired the money); *United States v. Bikundi*, No. 14-030-BAH, 2016 WL 912169, at *1 (D.D.C. Mar. 7, 2016) (health care fraud was complete once the defendant received the fraudulent Medicaid funds).

*Kerley* is particularly instructive. There, like here, the defendant argued that the relevant funds were not obtained from a completed predicate offense. 784 F.3d at 344. The Sixth Circuit examined the indictment and relevant statute and determined that neither required the deposit of unlawful proceeds to complete the offense. *Id.* Instead, the court found that the health care fraud and money laundering offenses were separate and distinct, noting that "[b]ecause Whaley's receipt of the GLT check was the last possible act in the alleged scheme, Whaley's deposit of the check— which occurred subsequent to his receipt—was separate from the completed wire fraud offense." *Id.* (citing *United States v. Cefaratti*, 221 F.3d 502, 511 (3d Cir. 2000)).

Like in *Kerley*, neither the Indictment nor statute in this case require the deposit of unlawful proceeds to complete the predicate offense. The Indictment's health-care-fraud charge alleges that Chavez "falsely and fraudulently billed United Healthcare for injections and other services never rendered." [DE 207 at 725]. The underlying statute, 18 U.S.C. § 1347, requires a person to "knowingly and willfully execute[], or attempt[] to execute, a scheme or artifice" to either (1) "defraud any health care benefit program" or (2) "to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program …" Thus, as in *Kerley*, the predicate offense was complete, at the latest, once Chavez and his co-conspirators received the checks mailed from United Health Care. Chavez and his co-conspirators had complete control of the funds once they received those checks, which they subsequently endorsed and either deposited into bank accounts or cashed in Miami, Florida. Chavez's deposit or cashing of those checks was thus a separate and distinct offense that formed the basis of the United States' money laundering charge.

Chavez nonetheless disputes that any of the United States' five categories of activities—(1) the creation of entities in the chiropractors' names and bank accounts for those entities; (2) commingling of legitimate and illegitimate funds; (3) cash withdrawals and disbursements from those accounts; (4) Chavez's failure to report purported income on his tax return; or (5) the purchase of cars—constitutes a transaction distinct from the predicate offense. [DE 451 at 5243]. Chavez instead argues that each of those categories were either part of the predicate offense itself or otherwise not designed to conceal proceeds from the predicate offense. *Id.* Specifically, Chavez claims that none of the bank accounts in which Chavez and his co-conspirators deposited United Health Care checks was established to help conceal proceeds of health care fraud. *Id.* at 5243–47. The defendants in *Halstead* made a similar claim, arguing that the health care fraud and money

10

laundering charges related to the same conduct and thus were not separate and distinct. 634 F.3d at 280. The Fourth Circuit rejected this argument:

> While Halstead entered into a single agreement with Burns and others for the purpose of fraudulently obtaining funds from insurance companies and healthcare providers, they agreed to commit several crimes including healthcare fraud, mail fraud, and money laundering. Entering into a single agreement to commit numerous crimes does not insulate the conspirators from liability for the crimes that they thereafter commit in furtherance of their agreement.

*Id.* Similarly, in *United States v. Mankarious*, the Seventh Circuit noted that "it does not matter when all the acts constituting the predicate offense take place. It matters only that the predicate offense has produced proceeds in transactions distinct from those transactions allegedly constituting money laundering." 151 F.3d 694, 706 (7th Cir. 1998). Thus, while health care fraud and money laundering activities often occur in short succession, the ultimate question is whether the health care distribution and the subsequent attempt to conceal are separate and distinct transactions. *Bikundi*, No. 14-030-BAH, 2016 WL 912169, at *1.

While receipt and deposit of the United Health Care funds into bank accounts established by Chavez and his co-conspirators overlapped, the two actions were separate and distinct. As previously discussed, the health care fraud was completed, at the latest, once the checks mailed from United Health Care to the clinics were received. After the checks were already mailed, Chavez and his co-conspirators opened bank accounts in Florida and subsequently deposited the checks into those accounts to conceal the funds from the chiropractors. [DE 455 at 5284–85]. These transactions were thus separate and distinct from the underlying offense.

Finally, Chavez argues that the United States failed to show that concealment was an "animating purpose" of the money laundering transactions. *Id.* at 5247. To find money laundering, "it is not enough for the government to prove merely that a transaction had a concealing effect. Nor is it enough that the transaction was *structured* to conceal the nature of illicit funds.

11

Concealment—even deliberate concealment—as mere facilitation of some *other* purpose, is not enough to convict." *United States v. Faulkenberry*, 614 F.3d 573, 586 (6th Cir. 2010) (citing *Cuellar v. United States*, 553 U.S. 550 (2008)). Instead, concealment must "be an animating purpose of the transaction," although it need not "be the *only* purpose of the transaction." *Id.*

In this case, a jury could reasonably find that concealment was an animating purpose of the post-fraud transactions. Chavez established several bank accounts in Miami with names nearly identical to accounts set up by chiropractors in Louisville. For example, Chavez established Locklear Chiropractic LLC and its corresponding bank account in Miami after Victor Locklear set up the Kentucky Locklear Chiropractic LLC. [DE 455 at 5285]. Thereafter, United Health Care checks mailed to Locklear Chiropractic LLC in Louisville were deposited into Chavez's Locklear account in Miami. *Id.* No billings to United Health Care originated from the Miami account. *Id.* Chavez also set up the Klondike Chiropractic Medical Center and Billing, LLC bank account in Miami after Michael Kowalski opened a business bank account in the name Klondike Medical Center LLC at Chase Bank in Louisville. *Id.* United Health Care checks were then endorsed and deposited into Chavez's Klondike Miami account. *Id.* The purpose of depositing the funds into accounts in Miami named nearly identically to those accounts set up by the chiropractors in Kentucky was to conceal the amounts of the fraudulently received funds from the chiropractors who may have noticed the deposits of such large amounts of funds into the accounts. A reasonable jury could find that an animating purpose of Chavez's decision to open like-named accounts in Miami and deposit and withdraw funds in those accounts was to conceal their illicit nature. Accordingly, there is no basis for the Court to disturb the jury's verdict under Rule 29.[2]

---

[2] While Chavez's and his co-conspirators' creation of and subsequent deposits into Miami bank accounts is sufficient to maintain Chavez's conviction, the other four categories of activities also constitute a separate and distinct transaction for money laundering purposes. Specifically, the commingling of funds, the disbursement of those funds, the failure to file a tax return, and the purchase of cars with those funds all

12

### C. Motion for a New Trial Under Rule 33

#### 1. Legal Standard

In the alternative, Chavez seeks a new trial for Count 16 under Rule 33. [DE 451 at 5251]. Rule 33 provides that "[u]pon the defendant's motion, [a district] court may vacate any judgment and grant a new trial if the interest of justice so requires." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (quoting Fed. R. Crim. P. 33(a)). Rule 33's "interest of justice" standard allows the grant of a new trial where substantial legal error has occurred. *United States v. Whittle*, 223 F. Supp. 3d 671, 675 (W.D. Ky. 2016), *aff'd*, 713 F. App'x 457 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1580 (2018) (citing *Munoz*, 605 F.3d at 373). The court may grant a new trial on one of two grounds: (1) newly discovered evidence under Rule 33(b)(1); or (2) a motion "grounded on any reason other than newly discovered evidence" under Rule 33(b)(2). *Id.* The burden is on the defendant to justify a new trial. *United States v. Carson*, 560 F.3d 566, 585 (6th Cir. 2009). "The decision to grant or deny a motion for a new trial is entirely within the discretion of the district court, and [the Sixth Circuit] will not reverse absent a showing of an abuse of discretion." *United States v. Anderson*, 76 F.3d 685, 692 (6th Cir. 1996); *see also United States v. Farrad*, 895 F.3d 859, 885 (6th Cir. 2018); *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015). "[S]uch motions should be granted sparingly and with caution." *United States v. Turner*, 995 F.2d 1357,

---

occurred after United Health Care mailed the fraudulently obtained checks. And a jury could reasonably find that these transactions were designed to conceal the proceeds of the underlying fraud. Although 18 U.S.C. § 1956 does not criminalize the spending of illegally obtained money, a reasonable jury may find that purchases are intended to conceal depending on the context in which they occur. *See Warshak*, 631 F.3d at 321 ("[A] particular transaction must be viewed in context when determining whether it was designed to conceal.") (citing *United States v. Burns,* 162 F.3d 840, 848 (5th Cir. 1998); *United States v. Garcia-Emanuel,* 14 F.3d 1469, 1476 (10th Cir. 1994)). Here, Chavez purchased the cars shortly after obtaining the illicit funds and has offered no alternative explanation for the purchases. *See United States v. Stoddard*, 892 F.3d 1203, 1215 (D.C. Cir. 2018) (considering an "innocent explanation" for car purchases in the money laundering context). And failure to file a tax return, considered with other financial activity, is evidence of intent to conceal. *United States v. Mangual-Santiago*, 562 F.3d 411, 429 (1st Cir. 2009), *cert denied*, 558 U.S. 912 (2009).

1364 (6th Cir. 1993); *see also United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (Rule 33 motions "are granted only in the extraordinary circumstance where the evidence preponderates heavily against the verdict." (citation and quotation omitted)).

   **2. Count 16**

Chavez does not assert newly discovered evidence under Rule 33(b)(1). Instead, he argues that a new trial is in the interest of justice because (1) the United States created a merger problem by basing its health-care-fraud and money-laundering charges on the same conduct, and (2) the United States misstated the law throughout its closing in a way that prejudiced Chavez's defense against the concealment-money-laundering charge. [DE 451 at 5251–52].

A merger problem arises "when defining 'proceeds' as 'receipts' automatically makes commission of the predicate offense a commission of money laundering and where the predicate offense carries a much lower statutory maximum sentence than the associated money laundering charge." *Crosgrove*, 637 F.3d at 655. However, merger does not occur when the predicate felony elements do not automatically lead to commission of concealment money laundering. *Buffin v. United States*, 513 F. App'x 441, 446 (6th Cir. 2013).

In *Buffin*, the court compared the elements of the predicate felony (mail fraud) with concealment money laundering and found that they were not the same. *Id.* There was thus no merger problem. *Id.* Similarly, in *Halstead*, the defendant claimed that his health-care-fraud and money-laundering transactions were coextensive. 634 F.3d at 280. The court disagreed because the money laundering transactions "were separate from the transactions constituting healthcare fraud. The healthcare fraud charges were defined by the obtaining of money from the fraudulent billing of healthcare providers, while the money laundering charge was defined by

14

transferring the proceeds thereafter." As a result, "the merger problem never arises" in such circumstances. *Id.*

As in *Halstead*, the predicate offense of health care fraud was complete once Chavez and his co-conspirators received the checks United Health Care mailed to the clinics. The separate offense of money laundering occurred when Chavez and his co-conspirators deposited and cashed those checks. By definition, then, the elements for the underlying health care fraud and the elements of concealment money laundering are not coextensive. Specifically, both the Indictment and the underlying statute define health care fraud as obtaining of money from the fraudulent billing of health care providers, while the money laundering charge is defined by transferring the proceeds *after the required predicate offense is completed*. Chavez's case therefore presents no merger problem.

Similarly, the United States' closing argument did not prejudice Chavez's defense against the concealment-money-laundering charge. First, Chavez argues that the closing argument conflated health care fraud and concealment money laundering. [DE 451 at 5251]. For example, during its closing, the United States stated that "[t]he entire scheme is concealment." [DE 414, Aug. 30, 2018 Tr. 3097:20–21]. And during its rebuttal, the United States stated:

> How were they to know that these other fake companies, these billing companies, were set up in Florida in their name without their knowledge? They didn't know that money was going there. You heard testimony about that. You heard testimony that there were mailboxes at the different clinics that the doctors didn't have a key to so that they didn't see all the checks that came in. All this to conceal what was going on.

*Id.* at 3143:7–14. Chavez argues that "[t]his conflation of the import of 'concealment' misstates what is required to prove concealment money laundering … and leads to a merger problem that can be cured only by removing from the evidentiary scales the evidence of nominee accounts and commingling of funds." [DE 451 at 5251].

15

The merger argument was discussed above, and it fails here for the same reasons. The United States' above statements address actions taken after United Health Care mailed the relevant checks to the clinics. Those actions were separate transactions and do not create a merger problem. Because there is no merger problem, the closing arguments could not have conflated health care fraud and concealment money laundering.

Second, Chavez again argues that the United States failed to prove that intent to conceal was an animating purpose behind the money laundering transactions. *Id.* at 5252. This argument is discussed at length above, and reference to the animating purpose behind Chavez's post-fraud transactions was not improper. The jury had all the information concerning the concealment-money-laundering charge, and the closing arguments were proper for concealment money laundering. The jury was free to draw inferences, assess witnesses' credibility, and interpret evidence for or against Chavez. There is thus no justification for the Court to take the extraordinary step of disturbing the jury's verdict under Rule 33.

## CONCLUSION

For the reasons set forth above, and being otherwise sufficiently advised, **THE COURT HEREBY ORDERS** that:

**(1)** Chavez's Motion for Documents Reflecting Inventory of Items in the Possession of Sergio Betancourt on Each Date of His Arrest [DE 398] is **DENIED**;

**(2)** Chavez's Motion for Judgment of Acquittal on Count 13 [DE 410] is **DENIED**; and

**(3)** Chavez's Motion for Judgment of Acquittal or For a New Trial on Count 16 [DE 451] is **DENIED**.